IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| MICHAEL R. SCHOW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CV 04-732-KI |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, Commissioner of | ) | OPINION AND ORDER |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

TIM WILBORN
WILBORN & ASSOCIATES, PC
2020-C SW 8th Avenue, PMB # 294
West Linn, Oregon 97068-4612

    Attorneys for Plaintiff

KARIN J. IMMERGUT
United States Attorney
CRAIG J. CASEY
Assistant United States Attorney
1000 SW Third Avenue, Ste 600
Portland Oregon 97204

1 - OPINION AND ORDER

LUCILLE G. MEIS
Office of the General Counsel
LEISA A. WOLF
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Ste 2900 M/S 901
Seattle Washington 98104

Attorneys for Defendant

KING, District Judge:

## INTRODUCTION

Plaintiff Michael Schow brings this action for judicial review of a final decision of the Commissioner of Social Security denying his applications for supplemental security income payments under Title XVI of the Social Security Act. The court has jurisdiction under 42 USC § 1383(c). The Commissioner's decision is affirmed.

## BACKGROUND

Schow was born August 14, 1958. He completed high school and one year of college. He worked in the past as a desktop publisher, assembler and installer of office cubicles and furniture, electrical equipment tester, semiconductor wafer tester, teacher and administrator in a school for diamond setting. He alleges disability beginning November 10. 1999, due to bad disks and cartilage in the back which cause pain and unpredictable periods of stiffness.

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability. *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 USC § 1382c(a)(3)(A).

The Commissioner has established a five-step sequential process for determining whether a person over the age of 18 is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 US 137, 140 (1987); 20 CFR § 416.920. Schow challenges the ALJ's evaluation of the evidence and his findings at the second and fifth steps of his decision.

At the second step, the Commissioner must determine whether the claimant has any "medically severe impairment or combination of impairments." *Yuckert*, 482 US at 140-41. The claimant will be found not disabled at step two if the ALJ determines that he has no severe impairment. 20 CFR § 416.920(c).

For the purposes of the fifth step, the Commissioner must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained work-related activities the claimant can still do on a regular and continuing basis, despite the limitations imposed by his impairments. 20 CFR §§ 416.920(e), 416.945; Social Security Ruling (SSR) 96-8p.

At step five, the Commissioner must determine whether the claimant can perform work that exists in the national economy. *Yuckert*, 482 US at 141-42; 20 CFR § 416.920(e), (f). Here the burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can do. *Yuckert*, 482 US at 141-42; *Tackett v. Apfel*, 180 F3d 1094, 1098 (9th Cir 1999). If the Commissioner meets this burden, then the claimant is not disabled. 20 CFR § 416.966.

## THE ALJ's FINDINGS

The ALJ found that Schow had degenerative disk disease, which significantly limits his ability to perform basic work activities and is therefore a severe impairment within the meaning of the Regulations. Tr. 25.[1]

The ALJ assessed Schow's RFC as follows:

> The claimant retains the residual functional capacity lift 20 pounds occasionally and 10 pounds frequently. He can stand and walk 2-hours out of an 8-hour day. He is limited to no more than occasional overhead work and occasional stair climbing. He should do no work requiring prolonged, fixed use of the neck in a downward direction.

Tr. 28.

At step five of the sequential evaluation, the ALJ found that Schow retained the RFC to perform work in the national economy. He identified examples of such work drawn from the testimony of the impartial vocational expert (VE), including general office worker, customer service clerk and cashier. Tr. 30. Accordingly, the ALJ concluded that Schow was not disabled and is not entitled to benefits under Title XVI of the Act.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 USC § 405(g); *Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of record filed with the Commissioner's Answer. (Docket # 8).

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F2d 771, 772 (9th Cir 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Andrews*, 53 F3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F3d 1152, 1156 (9th Cir 2001).

## DISCUSSION

Schow contends the ALJ erred at step two by failing to find his psychological impairments severe within the meaning of the Act. He contends the ALJ failed to accurately assess his RFC because he improperly rejected evidence and failed to fully develop the record. Schow contends he cannot perform the jobs identified by the VE or any other work in the national economy.

**I.     Step Two**

Schow argues that the ALJ erred at step two by failing to find that he suffers from psychological impairments that are severe within the meaning of the Act. An ALJ can deny a claim at step two only if the evidence shows that the individual has no severe impairments. SSR 85-28. The ALJ did not deny Schow's claim at step two. After concluding that Schow had degenerative disk disease causing pain and functional limitations that significantly limited his ability to perform basic work activities, the ALJ properly proceeded through the remaining steps of the sequential evaluation. Accordingly, he did not erroneously deny the claim at step two.

Having identified severe impairments, the ALJ was required to consider all functional limitations caused by all medically determinable impairments, including any that were not found to be severe, in the remaining steps of the sequential evaluation. 20 CFR § 416.923. The ALJ's

evaluation of the evidence of Schow's functional limitations from alleged mental impairments is discussed more fully below.

## II. RFC Assessment

Schow contends the ALJ improperly discredited his testimony, discounted medical source statements, failed to develop the record and rejected the statements of lay witnesses.

### A. Credibility Determination

Schow testified that he developed chronic severe pain in the back in late 1999, leaving him "laid up with pain" half the time. Tr. 380. On good days, he can walk about three blocks and sit for up to two hours. Schow also gets pain in his neck when sitting with his arms in front of him and leaning down, as when using a keyboard. On good days he can use his computer for up to two hours.

Schow is six feet four inches tall and weighs 275 pounds. He estimates he can lift 5 to 20 pounds. He can stand for 15 to 30 minutes at a time. He can walk three or four blocks before stopping to rest. He must use a handrail when climbing stairs. During an eight hour day, he would be able to stand and walk only for a couple of hours. He could spend about three hours of an 8-hour workday sitting. He has difficulty bending, stooping, crouching, reaching down, reaching up and gripping. He spends about half of each day in a recliner or with his feet elevated on an exercise ball.

Schow has trouble sleeping due to the pain in his back and neck. He gets spasms in his legs up to five times a month. Up to five times a month he gets numbness and tingling in his hands for up to 15 minutes. Once or twice a month Schow experiences crying spells that last for up to 30 minutes.

Schow learned how to set diamonds from his father. Before the onset of his disability, Schow and his father jointly wrote an instructional manual on the subject. Schow continues to

publish and market the book. He lives alone, but has help with the household chores and with packaging and shipping books. During a typical day, Schow takes up to 10 rest breaks lasting up to two hours each.

Schow was arrested in January 2000, on an old indictment for growing marijuana five years earlier. He served 60 days in jail followed by work-release for one week.

The ALJ found that Schow's testimony regarding his functional limitations was not credible. The ALJ must provide clear and convincing reasons for discrediting a claimant's testimony regarding the severity of his symptoms. *Dodrill v. Shalala*, 12 F3d 915, 918 (9th Cir 1993). *See also Smolen v. Chater*, 80 F3d 1273, 1283 (9th Cir 1996). The ALJ must make findings that are "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F3d 748, 750 (9th Cir 1995).

The ALJ may consider objective medical evidence and the claimant's treatment history as well as the claimant's unexplained failure to seek treatment or to follow a prescribed course of treatment. *Smolen*, 80 F3d at 1284. The ALJ may also consider the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge about the claimant's functional limitations. *Id*. In addition, the ALJ may employ ordinary techniques of credibility evaluation such as prior inconsistent statements concerning symptoms and statements by the claimant that appear to be less than candid. *Id*. *See also* SSR 96-7p.

Here the ALJ considered proper factors and made specific findings to support his credibility determination. The ALJ noted that Schow's allegations of debilitating pain were disproportionate to the mild objective findings. For example, in March 2000, a neurological examination and x-ray study of the spine were unremarkable. Tr. 270. An MRI scan showed some degeneration at C5-C6

7 - OPINION AND ORDER

with some bulge and loss of disk height. However, the cervical spinal cord had normal size, contour and signal intensity and the canal was only mildly narrowed without encroachment on the spinal cord. Tr. 272. The possibility of nerve root encroachment due to neuroforaminal narrowing remained a consideration, but the MRI did not resolve this. Tr. 272.

In December 2000, Johnny Delashaw, MD, performed a neurosurgical evaluation. He obtained unremarkable clinical findings consistent with the minimal objective findings. Schow had good range of motion in the neck, full strength in the related muscle groups and symmetrical reflexes. Dr. Delashaw could offer no neurosurgical treatment for Schow. Tr. 307.

In August 2001, another MRI of the cervical spine confirmed degenerative changes at C5-C6, consisting of loss of intervertebral disk space, mild narrowing of the bilateral neuroforamina and a "small disc bulge that does not cause central canal stenosis." Tr. 328-29.

The ALJ logically concluded that the objective evidence showing no nerve root or spinal cord compression and clinical findings of no functional limitations was inconsistent with Schow's claims of debilitating back and neck pain.

The ALJ also noted gaps in Schow's treatment history. For example, he found that Schow did not seek treatment between August 2001 and April 2002. Immediately prior to this break, Schow sought treatment for an exacerbation in neck and shoulder pain radiating to his leg at times. He said he "had been doing quite well up until about 2 or 3 days ago." Tr. 339. He then did not need treatment for eight months. Schow argues that he saw medical providers regularly throughout the relevant period, but cannot identify any medical records showing that he was examined or sought treatment during this 8-month gap. The only medical records from this period are informed consent forms for medications, signed in January 2002, without any accompanying treatment or examination

notes. Tr. 336-37. The ALJ could reasonably conclude that Schow's failure to seek treatment for this extended period is inconsistent with his claims of debilitating symptoms.

The ALJ also noted inconsistencies in Schow's presentation on examination. Schow reported to his treating nurse practitioner that his pain was so severe that he could not move his arm or neck. However, on examination he was able to do so. The nurse practitioner noted "inconsistent clinical findings, non-reproducible physical findings, interesting posturing that is not consistent with his known pathology." Tr. 322. He was unable to even touch any of Schow's vertebrae due to pain early in the examination, but later Schow had no discomfort when he applied moderate pressure sufficient to palpate soft tissue bony abnormalities. He noted that Schow found inappropriate postures more comfortable than postures that should have relieved the stress on the affected area of his spine. The ALJ could reasonably rely on these inconsistent symptom presentations in concluding that Schow's testimony about symptoms is unreliable.

The ALJ noted that Schow claimed he stopped working because his back pain became severe, but that he apparently was incarcerated at the same time. Schow alleged that he stopped working with the onset of disability in November 1999. Tr. 224. The earliest entry in his Multnomah County Corrections Health records was signed on October 31, 1999. Tr. 284. This reasonably suggests that Schow became unable to work because he was in jail. Schow alleged that he was incarcerated in January 2000 for 60 days, but his Corrections Health records from Inverness Jail span the period from October 31, 1999 to April 10, 2000. Tr. 274-87.

Based on the foregoing, the ALJ provided clear and convincing reasons supported by substantial evidence for discrediting Schow's testimony regarding the severity of his symptoms. *Dodrill v. Shalala*, 12 F3d 918; *Smolen v. Chater*, 80 F3d 1283. His findings are sufficiently

specific to permit this court to conclude that he did not do so arbitrarily. *Orteza v. Shalala*, 50 F3d 750.

The ALJ also cited reports of daily activities that he found inconsistent with disability, including unreported work activity and living independently. The evidence supporting the ALJ is less persuasive with respect to these factors. However, in light of the foregoing, the court finds additional reasons unnecessary to uphold the ALJ's credibility determination.

### B. Medical Source Statements

Schow contends the ALJ improperly rejected the opinion of Frank Colistro, EdD. Dr. Colistro examined Schow on May 25, 2000, on a referral from a state agency, to determine whether any psychological condition impaired Schow's employability. Dr. Colistro interviewed Schow and administered tests of adult aptitude, personality and depression. The test scores indicated intellectual function in the borderline mental retardation range and mild depression with serious somatic preoccupation. Tr. 290.

Dr. Colistro opined that Schow is a somewhat obsessive individual overattending to and magnifying his perception of bona fide pain and functional limitations:

> It is reasonable to conclude that his chronic pain and physical impairment, coupled with his depression and somatic preoccupation have led to moderate restrictions of activities of daily living and marked deficiencies in maintaining social functioning. It is reasonable to conclude that this combination of physical and psychological problems has resulted in frequent deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner in work, and repeated episodes of deterioration.

Tr. 290-91.

The ALJ can reject an examining physician's opinion that is inconsistent with the opinions of other treating or examining physicians, if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F3d 947, 957 (9th Cir 2002) quoting *Magallanes v. Bowen*, 881 F2d 747, 751 (9th Cir 1989); *Lester v. Chater*, 81 F3d 821, 830 (9th Cir 1995). He can reject an uncontradicted opinion for clear and convincing reasons. *Thomas*, 278 F3d at 956-57.

The ALJ rejected Dr. Colistro's opinion because it was not supported by the treatment record or any other evidence in the record. He pointed out that there is no evidence of borderline mental retardation. Schow completed high school and a year of college, co-authored and self published a book, engaged independently in self-employment and taught in and ran the administration of a school. Tr. 400-404. The ALJ could reasonably conclude that these activities are inconsistent with Dr. Colistro's opinion about Schow's intellectual function.

The ALJ rejected Dr. Colistro's finding of functional limitations from depression. He pointed out that Schow has never sought treatment for depression or engaged in mental health counseling for any mental health problem. Moreover, he has repeatedly denied experiencing depression, including in his hearing testimony. Tr. 317, 383.

The ALJ rejected Dr. Colistro's opinion that the combined effects of depression and pain cause limitations in the four major categories of function. He pointed out that there is no evidence that Schow has experienced more than mild limitations in activities of daily living, maintaining social function or concentration, persistence or pace. He found no evidence of any episodes of decompensation lasting for extended periods. Based on a complete review of the record of this case, the court agrees with the ALJ. Other than Dr. Colistro's opinion and the subjective report they are

based on, Schow has not identified any evidence of significant limitation in these areas. Accordingly, the ALJ's assessment of Dr. Colistro's opinion will not be disturbed.

Schow contends the ALJ improperly rejected a small part of the opinion of state agency physician Scott Pritchard, DO. In July 2000, Dr. Pritchard prepared a Social Security physical RFC assessment form. Tr. 297-303. Schow also contends the ALJ improperly rejected a small part of the opinion of Robert McDonald, DO, another state agency physician. Dr. McDonald prepared a RFC assessment form in October 2001. Tr. 349-54.

The Commissioner relies on medical and psychological consultants to make findings of fact about the nature of a claimant's impairments and the severity of the functional limitations they impose. 20 CFR § 416.927(f); SSR 96-6p. Such reviewing sources do not treat or examine the claimant. Therefore, their opinions are held to stricter standards and are given weight only to the extent they are supported by the record and consistent with the record as a whole. SSR 96-6p. The ALJ is not bound by the findings of reviewing consultants, but may not ignore their opinions and must explain the weight given to the opinions in their decision. *Id.*

Schow contends the ALJ did not adequately account for their findings regarding his postural limitations. Dr. Pritchard found that Schow had postural limitations restricting him to occasional stooping, crouching and crawling. Tr. 298. Dr. McDonald found that Schow should avoid "frequent climbing involving reaching or pulling up," frequent stooping and should not perform "constant overhead reaching." Tr. 351.

The ALJ found "the opinion of the State Agency consultants is generally consistent with the treatment record and is given significant weight." Tr. 28. The ALJ did not use the general terms "stooping" or "reaching" in his RFC assessment. However, he used more specific descriptions of

12 - OPINION AND ORDER

the stooping and reaching motions that Schow has difficulty performing, *viz* prolonged, fixed downward posture of the neck and work requiring prolonged overhead reaching. Accordingly, the ALJ did not improperly reject the opinions of Drs. Pritchard and McDonald.

Schow contends the ALJ improperly rejected the opinion of nurse Thanh Nguyen, who treated Schow at the Richmond Family Health Center during 2001. In November 2002, Nguyen completed a form prepared by Schow's attorney regarding the severity of Schow's symptoms and functional limitations. Tr. 360-68.

Nguyen is not a physician or the equivalent and her statements are not entitled to the same weight given the opinion of an acceptable medical source. 20 CFR § 416.913. However, her statements are entitled to consideration because of her treatment relationship with Schow and her expertise as a family nurse practitioner. *Id.* If the ALJ wishes to discount the opinion of such a source, he must give reasons that are germane to the witness. *Dodrill v. Shalala*, 12 F3d at 918; *Nguyen v. Chater*, 100 F3d 1462, 1467 (9th Cir 1996).

The ALJ gave Nguyen's opinion little weight because she reported clinical findings that were not supported by the objective medical evidence or the opinions of the state agency physicians who reviewed all the medical records. Her findings were also inconsistent with Schow's complaint's to medical providers. In addition, Nguyen opined that Schow could sit or stand/walk for a total of less than two hours in an 8-hour period. Tr. 365. The ALJ estimated that this would amount to "over 20 hours a day lying down." Tr. 28. While this is not the only way to interpret Nguyen's statement, this court cannot substitute its interpretation for that of the ALJ. *Edlund v. Massanari*, 253 F3d at 1156. The ALJ found the extreme functional limitations in Nguyen's statement inconsistent with Schow's activities. Tr. 28. This assessment will not be disturbed.

13 - OPINION AND ORDER

C.   **Development of the record**

Schow contends the ALJ failed to fully develop the record regarding the psychological basis of his back pain and the impact of his obesity on his other conditions. "In Social Security Cases, the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F2d 441, 443 (9th Cir 1983). Further development is required when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Mayes v. Massanari*, 276 F3d 453, 459-60 (9th Cir 2001).

Schow relies on the opinion of Dr. Colistro for the existence of a psychological basis for his pain. The ALJ properly discounted Dr. Colistro's opinion as discussed above. His opinion was not ambiguous or inadequate to allow for proper evaluation and the ALJ had no duty to pursue it further.

Show argues that the opinions of three physicians support the existence of a psychological pain disorder. In February 2001, David Sibell, MD, and Saud Siddiqui, MD, examined Schow at the OHSU Pain Management Center. Tr. 305-06, 309-10. They found that he had back pain associated with degenerative disk disease. His pain was primarily myofascial and they opined that physical therapy would be the course of action most likely to improve his condition. Tr. 305, 310. They did not suggest a psychological disorder or recommend psychological treatment.

In April 2002, Kristine Kruger, MD, examined Schow at the Richmond Family Health Center. Tr. 335. Dr. Kruger found that Schow had chronic pain due to degenerative disk disease with a likely myofascial component. She did not observe symptoms of a psychological disorder or suggest psychological treatment.

Contrary to Schow's argument, nothing in these medical records suggests the existence of a psychological disorder. All three physicians found the origin of his pain to be the spine and the

14 - OPINION AND ORDER

surrounding soft tissues. No ambiguity or inadequacy in their records compels further development of the record.

Schow next contends that the ALJ failed to develop the record regarding the impact of obesity on his other impairments. This argument fails because Schow has not identified a diagnosis of obesity in the treatment record, alleged any functional limitation attributable to obesity or identified any statement from a medical source indicating that obesity results in any functional limitation. The ALJ had no duty to develop the record in the absence of some basic evidence proffered by Schow to show that obesity has some impact on his ability to perform basic work activities. By evaluating all the evidence of functional limitations, the ALJ properly considered any functional limitations that might be attributable to obesity.

### D. Lay Witness Statements

Schow contends the ALJ improperly rejected the statement of his friend Lynn Sims, and the testimony of his mother, Corry Fleming. Friends and family members and others in a position to observe a claimant's symptoms and daily activities are competent to testify as to the claimant's condition. *Dodrill v. Shalala,* 12 F3d at 918. Such testimony cannot be disregarded without comment. *Nguyen v. Chater*, 100 F3d at 1467. If the ALJ wishes to discount lay witness testimony, he must give reasons that are germane to the witness. *Id.*

Sims did not testify but provided a written statement indicating that she has helped Schow twice a week for 2½ years with carrying objects over 15 pounds, such as heavy grocery bags, books, bricks and boards. Sims wrote that Schow keeps his own house and yard, but performs his chores in short periods between rests. He works at a slow pace and appears to be in pain about half the time. He is unable to get out of bed 20% of his days. Tr. 266.

Fleming testified at the hearing that she has seen her son about twice a week for the past two years. He becomes tired after walking three blocks. He tells her he is in pain about half the time and lies down frequently. After 45 minutes of light housework or light work in the yard, he lies down for about one hour. He does things slower than other people and he is irritable. Tr. 410-12.

The ALJ did not reject the lay witness statements without comment. He gave proper reasons based on substantial evidence for the parts he discredited. The ALJ found Sims and Fleming not credible to the extent their statements were based on Schow's subjective report of symptoms. He found that they credibly reported their observations that he frequently took rest breaks after short periods of activity, but found their observations did not show that these breaks were medically necessary. He also credited their observation that Schow needs assistance with heavy work, but found that this did not show that he is unable to perform activities requiring light exertion. Tr. 27-28.

In summary, the ALJ applied proper legal standards in assessing Schow's RFC and his conclusions are supported by substantial evidence in the record as a whole. The ALJ properly evaluated the evidence and there is no ambiguity or uncertainty that would require him to develop the record more fully.

### III.     Work in the National Economy

Schow contends the ALJ did not satisfy the Commissionr's burden of showing that he can perform work in the national economy. He argues that the ALJ failed to show that he can perform any of the occupations identified by the VE. Schow maintains that the occupations of general office worker and customer service clerk are semi-skilled jobs and the ALJ did not identify any transferrable skills. *See* SSR 83-10. Assuming Schow is correct on this point, his argument cannot

be sustained because the vocational evidence shows that he can perform work as an unskilled cashier.

Schow raises three objections to the ALJ's finding that he can perform work as a cashier. First, he claims he cannot work as a cashier because the limitations identified in Nguyen's opinion preclude all work. This contention cannot be sustained for reasons already described.

Second, Schow argues that the VE's testimony describing the work requirements of the cashier occupation deviates from information in the Dictionary of Occupational Titles (DOT). When a VE provides information about the requirements of an occupation, the ALJ must determine whether that information conflicts with the DOT and resolve the conflict before relying on the testimony to find that a claimant is not disabled. SSR 00-4p. An ALJ may rely on expert testimony which contradicts the DOT only if the record contains persuasive evidence to support the deviation. *Johnson v. Shalala*, 60 F3d 1428, 1435 (9th Cir 1995).

Schow contends there is a conflict because the VE testified that cashier jobs range from sedentary to light, while the DOT described it as a light occupation. This argument is baseless because the occupational descriptions in the DOT list the maximum requirements of occupations as generally performed. SSR 00-4p. The VE's testimony that cashier jobs range from sedentary to light is entirely consistent with the DOT information that jobs in the cashier occupation require no more than light exertion. Moreover, the ALJ found that Schow retained the RFC to perform the exertional requirements of light work.

Third, Schow argues that the cashier occupation would require frequent, forward neck flexion that he is not capable of performing. The ALJ's RFC precluded only prolonged forward neck flexion. The VE testified that work as a cashier requires forward neck flexion of "very short

17 - OPINION AND ORDER

duration." Tr. 423. Because the occupation does not require prolonged forward neck flexion, Schow's RFC does not preclude work as a cashier.

Schow argues that his neck problems would preclude flexion up to two thirds of the time, or five and one-third hours per day. However, there is no evidence that frequent brief forward neck flexion is equivalent to prolonged forward neck flexion. Moreover, the evidence shows that work as a cashier does not require forward neck flexion two thirds of the time. The VE testified that forward neck flexion in the cashier occupation would be "on an occasional level" up to about one third of the time. Tr. 423.

In summary, the ALJ elicited testimony from the VE based on hypothetical limitations that reflected his RFC assessment. None of the challenges to the ALJ's RFC assessment has merit. The ALJ's conclusion that Schow remains capable of working in the national economy as a cashier is sustained.

## **CONCLUSION**

Based on the foregoing, the ALJ's decision that Schow does not suffer from a disability and is not entitled to benefits under the Social Security Act is based on correct legal standards and supported by substantial evidence. The Commissioner's final decision is AFFIRMED and the case is DISMISSED.

DATED this __25th__ day of July, 2005.

    /s/ Garr M. King
Garr M. King
United States District Judge